*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. GREENMAN, Minor.

UNPUBLISHED
January 23, 2020

No. 349451
Genesee Circuit Court
Family Division
LC No. 17-134439-NA

Before: BOONSTRA, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating his parental rights to the minor child, AG, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), and (g) (failure to provide proper care or custody).[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In August 2017, the Department of Health and Human Services (DHHS) filed a petition to remove AG and her two minor half-sisters from their mother's care after receiving multiple reports that the children were unsupervised, their mother frequently used crack cocaine and intravenous drugs, the home was overflowing with garbage and bedbugs, and the children were dirty and infested with lice. The initial petition alleged that respondent had not seen AG since 2017 and did not provide child support. The petition also listed respondent's criminal history.

Respondent did not appear at any of the initial hearings, and the attorney appointed to represent him stated that she had tried without success to get in touch with him. When

---

[1] The proceedings below involved AG's mother and two other minor children with different fathers. During the course of these proceedings, the children's mother voluntarily relinquished her parental rights to the children, and the other fathers' rights to their respective children were also either relinquished or terminated; they are not parties to this appeal. Accordingly, we will use the term "respondent" to refer only to the father of AG.

respondent did appear, he testified that he was not aware that AG was in foster care. When respondent became involved with the case, he had stable housing and the trial court ordered a home visit to determine placement, but respondent's home was eventually determined to be unsuitable for AG because of rotted drywall in the ceiling. Respondent had some supervised visitation with AG after becoming aware of her removal, but in either late December 2017 or early January 2018, respondent was arrested on a domestic violence charge and incarcerated after entering a plea to interfering with electronic communication. On March 22, 2018, respondent entered a plea of admission to the trial court's jurisdiction; specifically, respondent admitted to allegations (as the petition was amended on the record) that he was then incarcerated and lacked the ability to care for AG at that time, and that he would not be able to provide care and custody of AG until he completed a jail alternative residential program called TRI-CAP in Saginaw. Respondent was ordered to participate in anger management classes, parenting classes, counseling, and a psychological evaluation, as well as to resolve all criminal matters and to obtain legal income and stable housing. That same day, respondent absconded from parole and could not be located for nine months; during that time, he did not participate in any of the services ordered by the trial court.

A supplemental petition was filed in May 2018 stating that respondent had not seen AG or provided financial support to her, or obtained suitable housing, since the trial court's adjudication. The petition noted that respondent had absconded from parole and could not be located.

In November 2018, the trial court authorized DHHS to file a petition to terminate respondent's parental rights, noting that respondent, having absconded from parole, could not be located. Respondent was eventually returned to a prison diversion program on January 15, 2019, and was released on parole to a substance abuse treatment program in March 2019. A supplemental petition was filed on January 29, 2019. The petition alleged that respondent had never made himself available to sign his treatment plan, had not provided evidence that he had completed anger management classes or a psychological evaluation, had not started individual therapy or parenting classes, had not obtained suitable housing, had provided no documentation of income despite asserting that he was employed, and had only attended one scheduled visit with AG on December 9, 2017.

The termination hearing was held on May 29, 2019. Respondent had not seen AG since December 2017. At the hearing, respondent testified that he had completed an anger management class, was enrolled in a parenting class, had taken "half" of a psychological evaluation, and had attended both group and one-on-one counseling. Respondent also testified that he went to three substance abuse meetings a week, attended weekly Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings, and had not used drugs since 2009 despite currently residing in housing through New Path, a substance abuse treatment program. Respondent testified that he was employed doing repairs for rental properties and that his employer could provide him with housing in the future; however, his caseworker testified that respondent had never provided documentation of this employment. The caseworker also testified that respondent lived at a residential treatment facility that was not suitable for children. Further, the caseworker indicated that AG was doing well in foster care, where she was placed with her half-sisters and was bonded with her foster parents, who intended to adopt her.

The trial court determined that termination was appropriate under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (g)[2] because respondent still had housing issues, had a significant criminal history, did not have the ability to support himself, and had not demonstrated that he had resolved his anger issues. The trial court also determined that termination of respondent's rights was in AG's best interests, so that she could receive the stability and support of adoption with her foster family.

This appeal followed.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred by determining that at least one statutory ground for termination had been proven. We disagree. We review for clear error the trial court's determination that at least one statutory ground for termination is supported by clear and convincing evidence. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App at 139. If this Court concludes that termination is supported by at least one statutory ground, additional grounds for the trial court's decision need not be considered. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Here, we conclude that the trial court correctly held that the grounds for termination found in MCL 712A.19b(3)(c) (*i*) and (c)(*ii*) had been proven by clear and convincing evidence.

MCL 712A.19b(3)(c) provides:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

---

[2] The trial court found that the grounds for termination in MCL 712A.19b(3)(j) had not been proven.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

A respondent must be given adequate time and opportunity to participate in protective proceedings, especially if the respondent has been incarcerated. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). The determination of what constitutes a reasonable time includes both how long it will take for the parent to improve conditions and how long the children can wait for the parent's improvement. *In re Dahms*, 187 Mich App 644, 648; 468 NW2d 315 (1991). When evaluating a termination under MCL 712A.19b(3)(c), this Court also considers the amount of time the children have already spent in foster care. See *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009) (holding that the two years the child had spent in foster care "constituted too long a period to await the mere possibility of a radical change in the respondent mother's life").

Here, the initial dispositional order relating to respondent was entered on March 22, 2018, following his plea to the court's jurisdiction. See *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014). The termination hearing was held more than 182 days later. The issues identified in the initial order were respondent's incarceration, lack of suitable housing or verified employment, and need for treatment to address his anger and domestic violence issues. Respondent was ordered to attend anger management classes, complete a psychological evaluation and follow all recommendations, participate in parenting education classes, address and resolve all criminal matters, obtain and maintain a legal source of income, obtain and maintain suitable housing and participate in counseling services. By the time of the termination trial, respondent had made some progress at addressing some of these issues, such as completing an anger management course, enrolling in a parenting class, and attending both one-on-one counseling and group sessions. However, he lacked appropriate housing and resided in a residential treatment program and, although he claimed to have stable employment, never provided proof of employment during the proceedings below; moreover, he never supported his statement that his employer would provide him with housing in the future. Respondent had begun, but had not completed, a psychological evaluation. Moreover, immediately after the trial court ordered him to participate in services, respondent instead absconded from parole and did not participate in any services or contact petitioner for nine months; only after he was returned to Michigan Department of Correction's supervision did he begin to address these issues. The trial court noted that respondent did not have appropriate housing for AG and did not have the ability to care for her. The trial court expressed concern with respondent's extensive criminal history, including his recent conviction and decision to abscond without contacting his daughter for nine months. The trial court also commented that although counseling may have helped respondent recognize his underlying issues, the problems did not disappear merely by participating in treatment. We agree, especially considering that respondent had not yet completed a psychological evaluation or received recommendations for treatment as a result of such an evaluation. Overall, we conclude that the trial court did not clearly err by determining that

multiple barriers to reunification, beyond the mere fact of respondent's incarceration, see *Mason*, 486 Mich at 160-162, continued to exist at the time of trial.

The trial court also did not clearly err by determining that there was no reasonable likelihood that the conditions could have been rectified within a reasonable time considering the child's age. Although respondent eventually began to comply with the trial court's orders, his decision to abandon his responsibility toward AG for nine months represents nine months of time in which he could have participated in services, but chose not to. Although respondent argues that he did not receive a copy of the trial court's order to participate in services until April 2019, he was present at the hearing in March 2018, and he should have known about the conditions he was required to improve; moreover, any failure to receive documentation resulting from the March 2018 hearing was a result of his decision to abscond from parole and avoid contact with petitioner for almost a year. When respondent chose to abscond, AG was nine years old and had already been in foster care for more than a year. The trial court determined that AG was entitled to a safe and secure placement rather than giving respondent additional time to complete services, when he had chosen to squander a large amount of the time he had been given. The trial court did not err by concluding that the conditions that brought AG into its jurisdiction continued to exist and that there was no reasonable likelihood that they would be rectified in a reasonable time given AG's age. MCL 712A.19b(3)(c)(*i*).

With regard to (c)(*ii*), the supplemental petitions filed in May 2018 and January 2019 also alleged respondent's failure to obtain adequate housing and participate in services. Therefore, to the extent that these conditions arose after the initial adjudication, we conclude that the trial court did not clearly err by concluding that they continued to exist and that there was no reasonable likelihood that they would be rectified in a reasonable time given AG's age. MCL 712A.19b(3)(c)(*ii*).

Because we affirm the trial court based on MCL 712A.19b(3)(c), we decline to address the trial court's findings and conclusion regarding MCL 712A.19b(3)(g). *In re HRC*, 286 Mich App at 461.

III. BEST-INTEREST DETERMINATION

Respondent also argues that the trial court erred by determining that termination was in AG's best interests. We disagree. We review for clear error a trial court's decision that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). When determining the best interests of the child, we weigh all of the evidence and consider a variety of factors including

the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citation omitted).]

Here, the trial court stated numerous reasons why termination was in AG's best interests. Respondent did not have suitable housing for a child, did not live independently, and although purportedly employed, struggled to support himself financially. Further, respondent had an extensive criminal history including a charge for domestic violence and had voluntarily absconded from parole without contacting AG for nine months. Before that, respondent had an extremely sporadic history of visitation with AG and, at the time of trial, had not seen her for over a year. The caseworker reported that AG did not talk about respondent and could not remember the last time she had seen him. In contrast, AG was doing very well in foster care. She had improved in school and had become bonded with her foster parents, who intended to adopt her. She also lived with her half-sisters, with whom she had lived her entire life. Given the balance of all of these factors, the trial court did not err by determining that termination of respondent's parental rights was in AG's best interests. *Olive/Metts*, 297 Mich App at 40; *White*, 303 Mich App at 713-714.

   Affirmed.


        /s/ Mark T. Boonstra
        /s/ Jonathan Tukel
        /s/ Anica Letica